## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| STEPHANIE ERIN RENO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 12-1121-JAR |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER AND OPINION

This matter is before the Court seeking review of the final decision of the Defendant Commissioner of Social Security denying Plaintiff Stephanie Reno's application for disability insurance benefits[1] and supplemental security income (SSI) benefits under the Social Security Act.[2] Upon *de novo* review, the Court affirms the decision of the Commissioner.

**I.     Procedural History**

In January 2009, Plaintiff protectively filed a Title II application for disability and disability insurance benefits and a Title XVI application for supplemental security income. In both applications she alleged an onset date of May 23, 2008. These applications were denied initially and upon reconsideration. After a hearing, the Administrative Law Judge (ALJ) issued a decision in October 2010, finding that Plaintiff was not disabled; in February 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Plaintiff then timely sought judicial review before this Court.

---

[1] 42 U.S.C. §§ 410 *et seq.*

[2] 42 U.S.C. §§ 1381 *et seq.*

## II. Standard for Judicial Review

Judicial review under 42 U.S.C. § 1383(c)(3) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[3] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[5]

## III. Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . "[6] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ."[7] The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[8] If the ALJ determines the claimant is disabled or not disabled at any step along the

---

[3] *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[4] *Id.* (quoting *Castellano*, 26 F.3d at 1028).

[5] *Id.*

[6] 42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[7] *Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[8] 20 C.F.R. § 416.920(a); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

way, the evaluation ends.[9]

## IV. Discussion

Plaintiff does not challenge the ALJ's determination at steps one, two and three, that: (1) she has not engaged in substantial gainful activity since the alleged onset date of her disability; (2) she has severe impairments of degenerative disc disease of the lumbar spine with scoliosis, obesity, right shoulder impingement and history of vocal cord paralysis; and (3) an impairment or combination of impairments does not meet or medically equal any of the listed impairments.[10] Plaintiff challenges the ALJ's determination at step four.

At step four, an "'ALJ must evaluate a claimant's physical and mental [residual functional capacity ("RFC")].'"[11] The RFC represents "the most that the claimant can still do despite her limitations, and must include all of the claimant's medically determinable impairments."[12] The ALJ is responsible for assessing a claimant's RFC considering all the relevant evidence, including the claimant's description of limitations, the medical evidence, and observations of physicians and others, but the ALJ need not rely entirely on a particular physician's opinion.[13] It is the claimant's burden to prove RFC, not the Commissioner's.[14]

At step four, the ALJ determined that Plaintiff has the RFC to perform sedentary work,

---

[9]*Id.*

[10]20 C.F.R. Pt. 404, subpt. P., app. 1, Listing of Impairments

[11]*DeWitt v. Astrue*, 381 F. App'x 782, 784 (10th Cir. 2010) (quoting *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)); SSR 96-8p, 1996 WL 374184, at *1–*2 (July 2, 1996).

[12]*DeWitt*, 381 F. App'x at 784 (quotation and citations omitted).

[13]*See* 20 C.F.R. §§ 404.1546, 416.946; SSR 96-5P, 1996 WL 374183, at *2 (July 2, 1996).

[14]*Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

except that she: (1) can stand and/or walk up to four hours in an eight hour workday; (2) needs a sit/stand option allowing her to change position every 30-60 minutes for up to five minutes at a time while remaining at the work station; (3) cannot do crouching or climbing of ladders; (4) can only occasionally climb stairs; (5) can less than occasionally twist or stoop; (6) can only occasionally look up or down in a fixed position of her head; (7) can only occasionally overhead reach with the right dominant upper extremity; (8) needs to avoid concentrated exposure to loud background noises; and (8) can only speak on an occasional basis.

Plaintiff specifically challenges the ALJ's failure to include certain limitations in an April 2010 opinion rendered by her treating physician, Dr. Brown. The ALJ adopted most of Dr. Brown's opinions, including those given in evaluations in January 2009 and February 2009, and adopted some of Dr. Brown's opinion given in April 2010. Plaintiff argues that the ALJ should have adopted all of Dr. Brown's opinion in April 2010, including his opinion that Plaintiff: (1) had pain that frequently to constantly interfered with attention and concentration needed to perform simple work tasks; (2) needed to walk for about two minutes every 60 minutes; (3) needed to shift positions from standing, walking or sitting at will; and (4) would likely be absent from work as result of her impairments about two days per month. Plaintiff argues that the ALJ's selective adoption of only part of Dr. Brown's opinion is not supported by substantial evidence. The Court disagrees.

A treating source opinion may be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record, but if it is "deficient in either respect, it is not entitled to

4

controlling weight."[15] The ALJ largely adopted the opinions of Dr. Brown, incorporating the opinions he rendered in evaluations of Plaintiff in January and February 2009, and incorporating much of the opinions Dr. Brown rendered in April 2010. In so doing, the ALJ analyzed and gave appropriate weight to the opinions of Dr. Brown, in accordance with the factors provided in *Goatcher v. U.S. Department of Health & Human Services*,[16] for analysis of the opinions of any medical source. Contrary to Plaintiff's assertion, the ALJ recognized that Dr. Brown was Plaintiff's treating physician from August 2007 to June 2009, and thus did take into account their treatment relationship.

Moreover, the ALJ's decision to not adopt all limitations opined by Dr. Brown in April 2010 is justifiable for a number of reasons. First, Dr. Brown's opinion that Plaintiff would likely be absent two days a month finds no support in the record; none of the physicians noted this, and none of the medical records indicate such a pattern of absences due to Plaintiff's pain or other limitations.

Furthermore, Dr. Brown's opinion that Plaintiff's pain frequently or constantly impaired her attention and concentration finds no support in any other evidence in the record. Dr. Brown certainly made no such findings during his course of treatment of Plaintiff from 2007 to 2009. Only in April 2010, after he was no longer treating Plaintiff, did Dr. Brown opine about the effect of Plaintiff's pain on her concentration and attention. Dr. Brown did not evaluate, much

---

[15]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374188, at *5 (July 2, 1996)).

[16]52 F.3d 288, 290 (10th Cir. 1995) (court held that factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion).

less treat Plaintiff after June, 2009. And, there is no other objective medical evidence, from other treatment or evaluation records before or after June 2009, that Plaintiff's attention and concentration were compromised. In fact, the treatment records of Dr. Brown, as well as the records of Drs. Shriwise and Davis, demonstrate that Plaintiff's pain was treated conservatively, with physical therapy, pain medications, and recommendations to weight loss and a fitness program to facilitate weight loss. Moreover, contrary to Plaintiff's assertions, it is clear that both Drs. Brown and Shriwise considered Plaintiff's obesity and scoliosis; both expressly discuss these issues in their clinical findings. Nor is there subjective evidence that Plaintiff's attention and concentration were compromised because of severe pain. And, in her function reports, Plaintiff reported that she could pay attention constantly, as well as follow written and spoken instructions very well and handle stress and changes in routine very well.

Similarly, Dr. Brown's April 2010 opinions that Plaintiff needed to walk for two minutes every 60 minutes, and needed to be able to shift positions at will find no support in his treatment records, nor in the clinical findings or opinions of Drs. Shriwise and Davis. Although Plaintiff testified that when sitting, every thirty minutes she needed to stand and "walk it out" before sitting again, the ALJ properly discredited this testimony, in light of the lack of objective medical evidence, and the fact that Plaintiff's self-described daily activities belie her alleged need to stand and walk every thirty minutes. In fact, Plaintiff described her daily activities as including watching television, reading and using the computer, "things she [could] do to keep busy without putting stress and strain" on her back. And, neither Dr. Brown, nor Drs. Shriwise or Davis rendered any clinical findings that Plaintiff needed to be able to shift to a standing or sitting position at will. Dr. Shriwise did not specify the frequency that Plaintiff needed to

alternate positions.  Thus, the ALJ's RFC assessment that Plaintiff needs an option to sit or stand, allowing her to change position every 30-60 minutes for up to five minutes at a time while remaining at the work station, finds substantial support in the evidence of record, and adequately accommodates Plaintiff's need to periodically shift positions.

## V. Conclusion

For the above stated reasons, the decision of the Commissioner is affirmed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying Plaintiff disability benefits and supplemental security income is **AFFIRMED.** .

**IT IS SO ORDERED.**

Dated: February 7, 2013

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE